UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLSTATE INSURANCE CO.,
ALLSTATE FIRE AND CASUALTY
INSURANCE CO., ALLSTATE
PROPERTY AND CASUALTY INSURANCE
CO., ESURANCE INSURANCE CO., and
ESURANCE PROPERTY AND CASUALTY
INSURANCE CO.,

                  Plaintiffs,

                                              Civil Case No. 20-12939

v.                                        Honorable Linda V. Parker

411 HELP, LLC, 4 UR RECOVERY
THERAPY LLC, A1 OCCUPATIONAL
THERAPY LLC, GRAVITY IMAGING, LLC,
4 TRANSPORT INC., NEW HORIZON
CHIROPRACTIC PLLC, SPINE & HEALTH PLLC,
FIRST MEDICAL GROUP, PLLC, UNIQUE
LAB SOLUTIONS LLC, 4 HEALTH MANAGEMENT LLC,
VELOCITY MRS – FUND IV, LLC,
VELOCITY MRS – FUND V, LLC, HMRF – FUND III, LLC,
NATIONAL HEALTH FINANCE DM, LLC,
HASSAN FAYAD, MIRNA FAYAD,
WILLIAM GONTE, M.D., GEOFFREY KEMOLI SAGALA, D.C.,
and ERNESTO CARULLA, P.T.

                  Defendants.
_____/

## OPINION AND ORDER

      This dispute arises from no-fault insurance benefits Plaintiffs paid to

Defendants.  Plaintiffs are insurance companies providing no-fault insurance

coverage in Michigan.  In a Complaint filed November 2, 2020, Plaintiffs allege

that Defendants engaged in a scheme to defraud Plaintiffs by submitting and

causing to be submitted false and fraudulent medical records, bills, and invoices

through interstate wires and the U.S. mail in violation of the federal Racketeer

Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d), and

state law.  Counter-Complaints have been filed by various Defendants, alleging

that Plaintiffs breached insurance contracts by failing to pay no-fault benefits due

to Defendants' patients and Plaintiffs' insureds.  The Counter-Complaint also seeks

a declaration that the unpaid benefits are owed.

Presently before the Court are the following motions:

- A Motion for More Definite Statement or, in the Alternative, to Dismiss filed by Defendants HMRF Fund – III, LLC and Velocity MRS – Fund IV, LLC (ECF No. 91);

- A Motion to Dismiss Counterclaim filed by Plaintiffs (ECF No. 100); and

- A Motion to Dismiss filed by 411 Help, LLC, UR Recovery Therapy LLC, A1 Occupational Therapy LLC, Gravity Imaging, LLC, 4 Transportation, Spine & Health PLLC, First Medical Group, PLLC, 4 Health Management LLC, Hassan Fayad, and Mirna Fayad (collectively "Fayad Defendants") (ECF No. 110).

The motions have been fully briefed.  Finding the legal arguments sufficiently

presented in the parties' briefs, the Court is dispensing with oral argument pursuant

to Eastern District of Michigan Local Rule 7.1(f).

2

## I.   Standard of Review

The Federal Rules of Civil Procedure require that a plaintiff's complaint contain only "a short and plain statement" showing the court's jurisdiction, entitlement to relief, and the relief sought.  Fed. R. Civ. P. 8(a).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556.)  The plausibility standard "does not impose a probability requirement at the pleadings stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."  *Twombly*, 550 U.S. at 556.

Where a pleading alleges fraud, the Federal Rules of Civil Procedure impose a heightened pleading requirement.  *See* Fed. R. Civ. P. 9(b) (providing that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").  To meet Rule 9(b)'s particularity requirement, a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were

made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (internal quotations and citations omitted).

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Rule 12(e) of the Federal Rules of Civil Procedure allows a party to move for a more definite statement before responding to the pleading when the pleading "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading[.]" The motion is "ordinarily restricted to situations where a pleading suffers from unintelligibility rather than want of detail, and if the requirements of the general rule as to pleadings are satisfied and the opposing party is fairly notified of the nature of the claim such motion is inappropriate." *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 414-15 (D. Or. 2002) (quoting *Tilley v. Allstate Ins. Co.*, 40 F. Supp. 2d 809, 814 (S.D. W. Va. 1999)); *see also Resolution Trust Corp. v. Gershman*, 829 F. Supp. 1095, 1103 (E.D. Mo. 1993) ("Rule 12(e) provides a remedy for unintelligible pleadings; it is not intended to correct a claimed lack of detail.").

"A motion for a more definite statement is generally left to the district court's discretion."  *Sheffield*, 211 F.R.D. at 414 (citing *Tilley*, 40 F. Supp. 2d at 814).  Rule 12(e) motions "are not favored by the courts 'since pleadings in the federal courts are only required to fairly notify the opposing party of the nature of the claim.'"  *Resolution Trust Corp. v. Dean*, 854 F. Supp. 626, 649 (D. Ariz. 1994) (quoting *A.G. Edwards & Sons, Inc. v. Smith*, 736 F. Supp. 1030, 1032 (D. Ariz. 1989)).  "If the moving party could obtain the missing detail through discovery, the motion should be denied."  *Davison v. Santa Barbara High Sch. Dist.*, 48 F. Supp. 2d 1225, 1228 (C.D. Cal. 1998) (citing *Beery v. Hitachi Home Elec. (America), Inc.*, 157 F.R.D. 477, 480 (C.D. Cal. 1993)); *see also Becker v. Clermont Cnty. Prosecutor*, No. 1:07cv511, 2008 WL 2230178, at *2 (S.D. Ohio 2008) ("Motions for a more definite statement are not favored by the courts in light of the availability of pretrial discovery procedures.")

Plaintiffs' motion to dismiss challenges, in part, the Fayad Defendants' standing to assert their counterclaims.  Such a challenge is asserted under Federal Rule of Civil Procedure 12(b)(1).  Rule 12(b)(1) motions "generally come in two varieties: a facial attack or a factual attack."  *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).

A facial attack challenges the sufficiency of the pleading itself.  In that instance, the court accepts the material allegations in the complaint as true and

5

construes them in the light most favorable to the nonmoving party. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974)).  In contrast, a factual attack is "not a challenge to the sufficiency of the pleading's allegation, but a challenge to the factual existence of subject matter jurisdiction." *Id.*  When a factual attack, also known as a "speaking motion," raises a factual controversy, the district court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Gentek Bldg. Prods.*, 491 F.3d at 330 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).  "In its review, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts." *Id.*  "[W]hen a defendant produces evidence challenging the factual existence of [subject matter jurisdiction], a plaintiff must generally prove [subject matter jurisdiction] with evidence, even at the motion-to-dismiss stage." *Harris v. Lexington-Fayette Urban Cnty. Gov't*, 685 F. App'x 470, 472 (6th Cir. 2017) (citing *Taylor v. KeyCorp.*, 680 F.3d 609, 613 (6th Cir. 2012); *Superior MRI Servs., Inc. v. All Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015)).

II.    **Background**[1]

As indicated, Plaintiffs are insurance companies that do business in
Michigan.  Plaintiffs are suing 17 defendants it claims played a role in the alleged
insurance fraud scheme: 411 Help, LLC; 4 Ur Recovery Therapy LLC ("4 Ur
Recovery"); A1 Occupational Therapy LLC ("A1"); Gravity Imaging, LLC; 4
Transport Inc.; New Horizon Chiropractic PLLC ("New Horizon"); Spine &
Health PLLC; First Medical Group, PLLC ("First Medical"); Unique Lab
Solutions LLC ("Unique Lab"); 4 Health Management LLC ("4 Health"); Velocity
MRS – Fund IV, LLC ("Velocity"); HMRF – Fund III, LLC ("HMRF"); National
Health Finance DM, LLC ("NHF"); Hassan Fayad; Mirna Fayad; William Gonte,
M.D., Geoffrey Kemoli Sagala, D.C., and Ernesto Carullo, P.T.  Defendants are a
pain management clinic, physical therapy clinics, a chiropractic clinic, an
occupational therapy clinic, a magnetic resonance imaging ("MRI") facility, a
transportation company, a urine drug testing laboratory, a marketing company,
medical funding companies, and the owners, managers, agents, or representatives
of those entities.

Plaintiffs allege that Defendants used the medical provider entities named as
Defendants (hereafter "Medical Provider Defendants") to submit exorbitant

---

[1] The facts set forth herein are derived solely from Plaintiffs' Complaint.

charges to Plaintiffs for purported medical services, procedures, and equipment that sometimes were not actually provided, were unlawful, were not medically necessary, and were fraudulently billed. According to Plaintiffs, the fraudulent scheme was driven by the Fayad Defendants. They oversaw a vast network of runners, solicitors, and medical providers who conspired to identify individuals allegedly involved in motor vehicle accidents and induce those individuals to go to the Medical Provider Defendants to generate claims to Plaintiffs.

Plaintiffs describe a "cooperative" run by Michael Angelo and Wesley Blake Barber. Once patients were identified, Defendant Hassan Fayad, along with Angelo and Barber, directed those patients to be transported to the medical clinics they owned and controlled to generate claims for unnecessary medical services to be submitted to Plaintiffs. Bills also were submitted to Plaintiffs for payment of the cost to transport patients to and between Defendants' treatment facilities. Patients also were given prescriptions as a matter of course. A predetermined treatment protocol was used to maximize the amount of charges generated by the Medical Provider Defendants. According to Plaintiffs, patients were recruited from places like homeless shelters and were paid for their participation.

Velocity, HMRF, and NHF (collectively "Funding Defendants") purchased the right to collect no-fault payments for services performed by the Medical Provider Defendants. According to Plaintiffs, the Funding Defendants knew that

the claims for payment were fraudulent and unlikely to be paid by insurers upon investigation, as evidenced by the fact that the Funding Defendants paid just a small fraction of the amounts billed to acquire the accounts receivable. The Funding Defendants, which are based in Texas, sent representatives to Michigan to oversee and assist with the operations of the defendant clinics. The Funding Defendants participated in the operation and control of the defendant clinics, Plaintiffs allege, in several ways.

For example, the Funding Defendants had their Chief Legal Officer prepare assignment of benefit forms for patients to sign. They also prepared and organized billing information to send bills to Plaintiffs for the unnecessary services. Further, they coordinated with personal injury attorneys who sought payments from Plaintiffs on behalf of Defendants. The Funding Defendants also mailed claims directly to Plaintiffs seeking payment for the fraudulent services billed by the Medical Provider Defendants.

Plaintiffs allege that the Funding Defendants paid "commissions" to individuals involved in Defendants' operations, such as Barber, to incentivize the generation of excessive bills for unnecessary treatment.

The fraudulent bills seeking payment were sent to Plaintiffs through interstate wires and the U.S. mail.

**III.    The Funding Defendants' Motion for More Definite Statement or to Dismiss**

The Funding Defendants argue that the allegations against them are contradictory and nonsensical due to Plaintiffs' "group pleading"—that is, using "Defendants" when clearly not referring to all Defendants.  The Funding Defendants also argue that Plaintiffs fail to adequately plead facts to state a RICO claim under § 1962(c)—specifically the requirement that the Funding Defendants had "some part in directing [the enterprise's] affairs"—and therefore also fail to adequately plead a RICO conspiracy claim under § 1962(d).

Plaintiffs' Complaint, when read as a whole, is neither contradictory nor nonsensical.  Nor is the Complaint vague or ambiguous.  It is only if the Funding Defendants ignore the section of the pleading outlining their specific role in the alleged RICO scheme that there is confusion between them and the Medical Provider Defendants.  The Complaint informs the Funding Defendants of the claims alleged against them and the relief sought and, as discussed in more detail below, provides a sufficient factual basis to support both.  A more definite statement is not required.

Turning more specifically to the adequacy of Plaintiffs' RICO claims against the Funding Defendants, Plaintiffs allege violations of §§ 1962(c) and (d).  These sections provide as follows:

10

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(c), (d).  To establish a RICO violation, the plaintiff must demonstrate "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (quoting *Sedima, SPRL v. Imrex Co.*, 473 U.S. 479, 496 (1985)). The Funding Defendants argue that Plaintiffs fail to plead non-conclusory facts to show that they conducted the affairs of the enterprise.

To support a RICO violation, a defendant's participation "must be in the conduct of the affairs of a RICO enterprise, which ordinarily will require some participation in the operation or management of the enterprise itself."  *Stone v. Kirk*, 8 F.3d 1079, 1091 (6th Cir. 1993) (quoting *Bennet v. Berg*, 710 F.2d 1361, 1364 (8th Cir.) (en banc), *cert. denied*, 464 U.S. 1008 (1983)).  "RICO liability is not limited to those with primary responsibility for the enterprise's affairs; only 'some part' in directing the enterprise's affairs is required.'"  *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 792 (6th Cir. 2012) (quoting *Reves v. Ernst &*

11

*Young*, 507 U.S. 170, 179 (1993)).  This "can be accomplished either by making decisions on behalf of the enterprise or by knowingly carrying them out."  *Id.* (quoting *United States v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008)).

Nevertheless, to be liable under § 1962(c), the defendant "must have 'conducted or participated in the conduct of the '*enterprise's* affairs,' not just [its[ *own* affairs.'"  *Id.* (quoting *Reves*, 507 U.S. at 185) (emphasis in original). Participation, for purposes of RICO, "has a narrower meaning than 'aid and abet.'" *Stone*, 8 F.3d at 1091 (quoting *Reves*, 507 U.S. at 178).  Plaintiffs plead sufficient non-conclusory allegations to satisfy the conduct required in the above cases to state their RICO claims against the Funding Defendants.

The alleged facts do not simply state that the Funding Defendants prepared assignment of benefit forms to pursue claims on behalf of the Defendant Medical Providers' patients.  Instead, the facts allege that the Funding Defendants took an active role to facilitate the preparing of forms and documents to defraud Plaintiffs, mailed fraudulent claims to Plaintiffs, and worked with personal injury attorneys to collect payment on the fraudulent claims.  (*See* Compl. ¶¶ 165-83, ECF No. 1 at Pg ID 31-35.)  According to Plaintiffs, the Funding Defendants paid commissions to incentivize the Medical Provider Defendants to generate excessive bills and took over the Medical Provider Defendants' billing and other operations to control the efforts to induce Plaintiffs to make payments on fraudulent claims.  (*See id.*

12

¶¶ 170-74, 176-77, Pg ID at 32-34.) These allegations must be accepted as true for purposes of the Funding Defendants' pending motion.

For these reasons, the Court is denying their motion for a more definite statement or, alternatively, to dismiss.

## IV.    Fayad Defendants' Motion to Dismiss

The Fayad Defendants argue that Plaintiffs' claims sound in contract—i.e., are based on the insurance policies; and therefore, Plaintiffs' RICO and state law tort claims fail as a matter of law.  The Fayad Defendants further argue that Plaintiffs' declaratory judgment claim fails because jurisdiction must be premised on some other federal statute and such jurisdiction is lacking where Plaintiffs' RICO claim fails.

If the Fayad Defendants' arguments were persuasive, one would expect to see them raised in response to the numerous, almost identical RICO complaints insurance companies have been filing against medical providers in this District for the last several years.  In fact, because the arguments lack merit, they have not been routinely raised.  Tellingly, not one of the decisions cited in the Fayad Defendants' motion was rendered in one of these similar cases.  Where defendants previously asserted these arguments, district judges rejected them.  *See State Farm Mut. Auto. Ins. Co. v. Angelo*, No. 19-10669, 2020 WL 5939194, at *1-2 (E.D. Mich. Oct. 7, 2020); *Allstate Ins. Co. v. Inscribed PLLC*, No. 19-13721, 2020 WL

13

5801186, at *6 (E.D. Mich. Sept. 29, 2020) (rejecting similar argument raised with respect to only the plaintiff's unjust enrichment claim); *State Farm Mut. Auto. Ins. Co. v. Vital Cmty. Care, PC*, No. 17-11721, 2018 WL 2194019, at *9 (E.D. Mich. May 14, 2018) (same); *State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-11500, 2013 WL 509284, at *2 (E.D. Mich. Jan. 12, 2013) (quoting *Cooper v. Auto Club Ins. Ass'n*, 751 N.W.2d 443, 448 (Mich. 2008) (holding that the plaintiff's common law fraud and unjust enrichment claims are not superseded by the no-fault act as "[t]he Michigan Supreme Court has recognized that a 'fraud claim is clearly distinct from a no-fault claim'").

Plaintiffs do not allege the existence of contracts or contractual duties between themselves and Defendants in the Complaint. The insurance agreements are between Plaintiffs and their insureds. Nor is any contract "central" to the claims Plaintiffs assert in their Complaint. *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999). Plaintiffs are not asserting that they "mistakenly made payments" under the terms of any contract (*see* ECF No. 110 at Pg ID 3242); instead, they allege that Defendants submitted fraudulent bills. The duty at the heart of Plaintiff's RICO and tort claims is the duty not to defraud, which arises independently of any contract.

For these reasons, the Court is denying the Fayad Defendants' motion to dismiss.

14

**V.      Plaintiffs' Motion to Dismiss Counter-Complaint**

411 Help, 4 UR Recovery, Gravity Imaging, 4 Transport, Spine & Health,

and First Medical Group (hereafter collectively "Defendant Providers") filed a

Counter-Complaint against Plaintiffs seeking to collect no-fault benefits due for

products, services, and accommodations provided to Plaintiffs' insureds.  (ECF

No. 33 at Pg ID 842-57.)  These individuals, according to the Counter-Complaint,

assigned their rights and burdens under Plaintiffs' insurance policies to the

Defendant Providers.  (*Id.* at Pg ID 849, ¶ 39.)  Plaintiffs contend that the Counter-

Complaint is subject to dismissal for several reasons.

First, Plaintiffs argue that the Defendant Providers lack standing to seek the

no-fault benefits of at least 105 of the 118 patients identified in the Counter-

Complaint because the Defendant Providers sold their accounts receivables to the

Funding Defendants.  Alternatively, and as to the remaining 13 patients, Plaintiffs

maintain that the assignments signed by their insureds are invalid for lack of

consideration.  The individuals were required to execute the assignments to receive

treatment and/or services from the Defendant Providers; however, they remained

liable to the Defendant Providers for the full amount charged and the Defendant

Providers were not obligated to take any action on the patients' behalf to collect

no-fault benefits from the insurer.  Lastly, Plaintiffs argue that because the

15

Defendant Providers cannot obtain the substantive relief sought, their declaratory judgment claim also fails.  As such, Plaintiffs maintain, it must be dismissed.

In *Covenant Medical Center, Inc. v. State Farm Mutual Automobile Insurance Company*, 895 N.W.2d 490 (Mich. 2017), the Michigan Supreme Court held that "healthcare providers possess no statutory cause of action under [Michigan's] no-fault act." *Id*. at 504-05.  The Court stated further, however, that its holding was "not intended to alter an insured's ability to assign his or her right to past or presently due benefits to a healthcare provider." *Id*. at 505 n.40 (citations omitted).  "Thus, while a health care provider no longer has a statutory cause of action against insurers, it may still have a contract-based cause of action if there has been a valid assignment of rights." *Estate of Grimmett v. Encompass Indem. Co.*, No. 14-14646, 2017 WL 5592897, at *2 (E.D. Mich. Nov. 21, 2017) (citing *Covenant*, 895 N.W.2d at 505 n.39).

"[A]n assignee of a cause of action becomes the real party in interest with respect to that cause of action, inasmuch as the assignment vests in the assignee all rights previously held by the assignor." *Cannon Twp. v. Rockford Pub. Sch.*, 875 N.W.2d 242, 246-47 (Mich. Ct. App. 2015) (citations omitted).  "In other words, after the execution of the assignment, only the assignee may enforce the acquired rights. *Mich. Pain Mgmt. v. Am. Country Ins. Co.*, No. 345932, 2020 WL 113944, at *4 (Mich. Ct. App. Jan. 9, 2020).

16

In contracts between the Defendant Providers and the Funding Defendants, the Defendant Providers assigned to the Funding Defendants "all right, title, and interest that any of them possess" to seek payment from a patient's insured. (*See* ECF No. 100-4 at Pg ID 2935.)  Nevertheless, under the terms of the agreement, the Defendant Providers retained a 50% interest of any sums paid by the insurers until such time as the Funding Defendants received a certain amount, at which time the Defendant Providers were entitled to retain 100% of the sums paid. (*Id.* at Pg ID 2935.)  According to the agreement, once the specified amount was paid to the Funding Defendants in full, identified receivables were to be "assign[ed] back" to the applicable medical providers. (*Id.*)  Further, a separate agreement contains a "Power of Attorney" provision in which the appointment to manage and service the receivables and enforce the Funding Defendants' rights is conferred upon the Defendant Providers.  (ECF No. 114-4 ¶ 6(a)).

For these reasons, the Court cannot conclude that the Defendant Providers lack standing to assert their Counter-Complaint.  A party has standing when it has a "personal stake in the outcome of the controversy." *Baker v. Carr*, 369 U.S. 186, 204 (1962); *Sumpter v. Wayne Cnty.*, 868 F.3d 474, 490 (6th Cir. 2017).  Thus, the Court turns to the validity of the insured's assignments to the Defendant Providers.

As the court explained in *ISpine, PLLC v. Enterprise Leasing Co. of Detroit*, No. 18-cv-13121, 2019 WL 1399981 (E.D. Mich. Mar. 28, 2019):

17

> "In determining whether an assignment has been made, the question is one of intent. A written agreement assigning a subject matter must manifest the assignor's intent to transfer the subject matter clearly and unconditionally to the assignee." *Burkhardt v. Bailey*, 260 Mich. App. 636, 655, 680 N.W.2d 453 (2004) (quoting *E & L Rental Equip., Inc. v Gifford*, 744 N.E.2d 1007, 1011 (Ind. Ct. App. 2001)). "No 'particular form of words is required for an assignment, but the assignor must manifest an intent to transfer and must not retain any control or any power of revocation.'" *Id.* at 654-55, 680 N.W.2d 453 (quoting *Travertine Corp. v. Lexington-Silverwood*, 670 N.W.2d 444, 447 (Minn. App. 2003)). Additionally, only past and present rights are assignable; any assignment of future rights is void. *See* Mich. Comp. Laws § 500.3143; *Prof'l Rehab. Assocs. v. State Farm Mut. Auto. Ins. Co.*, 228 Mich. App. 167, 174, 577 N.W.2d 909 (1998) (citing § 500.3143).

2019 WL 1399981, at *2. An assignment also must be supported by "legal consideration" and "mutuality of obligation." *Hess v. Cannon Twp.*, 696 N.W.2d 742, 748 (Mich. Ct. App. 2005) (quoting *Thomas v. Leja*, 468 N.W.2d 58, 60 (Mich. Ct. App. 1991)). Consideration requires "a bargained-for exchange." *Gen. Motors Corp. v. Dep't of Treasury, Rev. Div.*, 644 N.W.2d 734, 738 (Mich. 2002) (citation omitted). "[M]utuality of obligation means that both parties to an agreement are bound or neither is bound." *Domas v. Rossi*, 217 N.W.2d 75, 77 (1974) (citation omitted). That is, there is no mutuality of obligation "when one party is obligated to perform, but not the other." *Jaye v. Tobin*, 202 N.W.2d 712, 715 (Mich. Ct. App. 1972).

Contrary to Plaintiffs' argument, the Court finds consideration and mutuality of obligation supporting the purported assignments signed by the Defendant Providers' patients.  While the patients remained personally liable and responsible for the charges incurred, Plaintiffs "do[] not provide legal authority for the proposition that an assignment of a cause of action for insurance benefits cannot provide for secondary liability for the costs incurred." *ISpine*, 2019 WL 1399981, at \*3.  The distinction between the assignments here and in *ISpine* which Plaintiffs note in reply are not material in this Court's view.  Moreover, while the Defendant Providers were not obligated under the assignment to collect from the insurers on the patients' behalf, they were obligated to provide medical services to the patients. As the court found in *ISpine*, "[m]edical treatment appears to be sufficient consideration for an assignment of no-fault benefits, otherwise Michigan law would not permit such assignments." *Id*.

For these reasons, the Court concludes that the Defendant Providers have standing to pursue their breach of contract claim and, at this stage of the proceedings, the assignments enabling them to pursue those claims appear valid. Plaintiffs' argument for dismissal of the Defendant Providers' declaratory judgment claim therefore also fails.  As such, the Court is denying Plaintiffs' motion to dismiss the Counter-Complaint.

19

## VI.    Conclusion

For the reasons set forth above, the Court is denying the pending motions

(ECF Nos. 91, 100, 110).

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: September 30, 2021

20