## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Allstate Insurance Company et al.,

      Plaintiffs/Counter-
      Defendants,

v.

411 Help, LLC et al.,

      Defendants/Counter-
      Plaintiffs.

_____

Case No. 20-12939

District Judge Linda V. Parker

Magistrate Judge Jonathan J.C. Grey

## REPORT AND RECOMMENDATION ON COUNTER-PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

**I.**     **Background[1]**

On November 2, 2020, Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Property and Casualty Insurance Company, Esurance Insurance Company, and Esurance Property and Casualty Insurance Company ("Allstate" or "counter-defendants") filed a complaint against 411 Help, LLC, 4 UR Recovery Therapy LLC, Gravity Imaging, LLC, and 4 Transportation Inc. ("Medical Providers" or "counter-plaintiffs") and other entities. (ECF No. 1.)

---

[1] United States District Judge Linda V. Parker previously set forth a detailed recitation of the facts. (ECF No. 129.)

On December 2, 2020, Medical Providers filed a counter-complaint against Allstate, seeking to collect no-fault benefits due for services provided to Allstate's policyholders. (ECF No. 33.) Medical Providers alleged breach of contract and requested declaratory relief. *Id.*

On January 22, 2021, Allstate moved to dismiss Medical Providers' counter-complaint (ECF No. 100), which Judge Parker denied on September 30, 2021. (ECF No. 129). On January 5, 2022, Allstate, Medical Providers, and other parties attempted facilitation. (ECF No. 152, PAGEID.5243.) On January 6, 2022, Allstate filed its answer to Medical Providers' counter-complaint. (ECF No. 143.)

On January 20, 2022, over one year after the counter-complaint was filed, Medical Providers filed an amended counter-complaint without first seeking leave of the Court. (ECF No. 144.) After Allstate and Medical Providers conferred regarding the appropriateness of filing without seeking leave, Medical Providers withdrew the amended counter-complaint. (ECF No. 149.)

On February 1, 2022, Medical Providers filed a motion for leave to amend its counter-complaint. (ECF No. 150.) The Court held a hearing on March 24, 2022. Since the motion referenced exhibits that were not attached to the motion, the Court granted Medical Providers leave to re-file with the referenced exhibits. (ECF No. 157.) On April 13, 2022, Medical Providers filed a corrected counter-complaint with exhibits. (ECF Nos. 158, 159.)

2

Medical Providers seek to add four new causes of action against Allstate: (1) a Racketeer Influenced and Corrupt Organizations Act claim under 18 U.S.C. § 1964(c), (2) two 42 U.S.C. § 1981 claims, and (3) a Michigan Unfair Trade Practices Act ("MUPTA") claim. *Id.* Allstate responded to Medical Providers' motion (ECF No. 152), and Medical Providers replied (ECF No. 153).

For the reasons below, the Court **RECOMMENDS** that Medical Providers' motion be **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Court **RECOMMENDS** that Medical Providers' motion for leave to amend (1) to add a § 1964(c) claim be **GRANTED**, (2) to add two § 1981 claims be **DENIED**, and (3) to add a MUPTA claim be **GRANTED**.

## II.    Legal Standards

### A.    Motion to Amend Standard

Federal Rule of Civil Procedure 15(a) provides that a "party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Otherwise, a party may amend its pleading only with the opposing party's written consent or the court's leave or permission "when justice so requires." Fed. R. Civ. P. 15(a)(2).

3

Given the timing here, under Rule 15(a)(2), to amend its complaint, Medical Providers must receive leave to amend from the Court. The determination of when "justice so requires" the Court to provide leave to amend is "left to the sound discretion" of the court. *Robinson v. Michigan Consol. Gas Co. Inc.*, 918 F.2d 579, 591 (6th Cir. 1990). In exercising this discretion, the Court must consider several factors: (1) the moving party's "[u]ndue delay in filing [its motion for leave]," (2) "lack of notice to the opposing party," (3) "bad faith by the moving party," (4) "repeated failure to cure deficiencies by previous amendments," (5) "undue prejudice to the opposing party," and (6) "futility of amendment." *Robinson*, 918 F.2d at 591; *Foman v. Davis*, 371 U.S. 178, 182 (1962). Futility exists if the proposed amended complaint could not survive a Rule 12(b)(6) motion to dismiss. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

To deny a motion to amend, the Court "must find 'at least some significant showing of prejudice to the opponent.'" *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986)).

### B.    Futility - Motion to Dismiss Standard

To thwart a Rule 12(b)(6) motion to dismiss, a plaintiff must comply with Rule 8(a)(2), which requires a short and plain statement of the claim showing that

4

the pleader is entitled to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). A plaintiff must also illustrate the grounds of their entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted).

When assessing a complaint in consideration of Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). Although a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (citations omitted). The stated claim for relief must be "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[F]acial plausibility [exists] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Where the pleading alleges fraud, the Federal Rules of Civil Procedure impose a heightened pleading requirement. Fed. R. Civ. P. 9(b) (providing that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake"). The following requirements must also be met:

5

To meet Rule 9(b)'s particularity requirement, a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (internal quotations and citations omitted).

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

(ECF No. 129, PAGEID.3500–3501; *Allstate Ins. Co. v. 411 Help, LLC*, No. CV 20-12939, 2021 WL 4472778, at *1 (E.D. Mich. Sept. 30, 2021).) Additionally, allegations of systematic fraud require "some representative examples of [particular] fraudulent conduct." *State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 107 F. Supp. 3d. 772, 791 (E.D. Mich. 2015) (internal quotations and citations omitted).

## III.   Analysis

Allstate argues that: (1) Medical Providers' motion should be denied as futile; (2) Medical Providers acted with substantial delay and in bad faith; and (3) an amendment would result in substantial prejudice to Allstate. (ECF No. 152.)

6

**A. RICO Claim**

Medical Providers seek to add a RICO claim pursuant to 18 U.S.C. §
1964(c). (ECF No. 158.) Section 1964(c) creates a cause of action for "[a]ny
person injured in his business or property by reason of a violation of [18 U.S.C. §]
1962." "[B]y reason of" means the injury must be proximately caused by
the RICO violation. *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 265–68
(1992). In other words, Medical Providers "must demonstrate that [Allstate]
committed a criminal RICO violation, and that the violation caused an injury to
plaintiffs' business or property." *Rudder v. Rashid*, 68 F. Supp. 2d 813, 816 (E.D.
Mich. 1999).

Medical Providers did not specify the provision of § 1962 that Allstate
allegedly violated. In their proposed amended counter-complaint, Medical
Providers cite § 1962(c) for the proposition that that the defendants are each a
"person" and members of the enterprise. (ECF No. 158, PAGEID.5417.) However,
because several provisions in § 1962 mention "persons" and "enterprises," the
Court will not presume that Medical Providers intended to allege a § 1962(c)
violation.

Section 1962 prohibits four types of activities: (a) investing income derived
from a pattern of racketeering activity in an enterprise, (b) acquiring or maintaining
an interest in an enterprise through a pattern of racketeering activity, (c)

7

conducting an enterprise's affairs through a pattern of racketeering activity, and (d)

conspiring to violate any of the first three prohibitions.

Reading the proposed amended counter-complaint in the light most

favorable to Medical Providers, the Court finds that §§ 1962(c) and (d) are

applicable here. Accordingly, Medical Providers must show that Allstate violated

§§ 1962(c) or (d). Those sections provide as follows:

> (c) It shall be unlawful for any person employed by or associated
> with any enterprise engaged in, or the activities of which affect,
> interstate or foreign commerce, to conduct or participate, directly
> or indirectly, in the conduct of such enterprise's affairs through
> a pattern of racketeering activity or collection of unlawful debt.

> (d) It shall be unlawful for any person to conspire to violate any
> of the provisions of subsection (a), (b), or (c) of this section.

Medical Providers allege that Allstate has implemented a scheme to "delay,

deny[,] and diminish" payments for claims submitted by Medical Providers under

the Michigan No-Fault Act, Mich. Comp. Laws § 500.3101 et seq. (ECF No. 158.)

The Michigan No-Fault Act provides for payment of medical and rehabilitative

benefits for injured victims of motor vehicle accidents. MCL § 500.3107(1)(a).

Medical Providers assert that Allstate engages in an "unlawful" pattern of

automatically denying claims by Medical Providers, allegedly committing mail

fraud by issuing "fraudulent" investigation letters, explanations of benefits, and

other correspondences. (ECF No. 158.)

Allstate argues that Medical Providers fail to state a RICO claim upon which relief can be granted because (1) the claim is unactionable since it is a contract-based cause of action, (2) the claim does not meet the Rule 9(b) pleading standard for fraud, and (3) Medical Providers failed to plead an injury caused by Allstate. (ECF No. 152.)

### 1. Standing

First, the Court must determine the threshold issue of whether Medical Providers' injuries are actionable. The plain language of § 1964(c) limits actionable harms to injuries to business or property. Additionally, a RICO injury must be concrete, not intangible or speculative. *See Saro v. Brown*, 11 F. App'x. 387, 389 (6th Cir. 2001); *see also Fleischhauer v. Feltner*, 879 F.2d 1290, 1299 (6th Cir. 1989) (explaining that RICO plaintiffs must identify a "reasonable and principled basis of recovery" which is "not based upon mere speculation and surmise").

As Medical Providers assert, the right to receive payment for personal protection insurance benefits constitutes a property or business interest. MCL §500.3105(2); *see also County of Oakland v. City of Detroit*, 866 F.2d 839, 845 (6th Cir. 1989). The proposed amended counter-complaint specified the dollar amount in financial losses for each Medical Provider. (ECF No. 158, PAGEID.5401–5402.) The Court thus finds that Medical Providers established that

9

they suffered an actionable "injury to business or property" as the result of Allstate's denials or delays of payments.

## 2. Prima Facie Elements of a RICO Violation

Second, the Court turns to the merits of Medical Providers' claim. Medical Providers must allege "who, what, when, why, how, and where" in their claims. *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012) (citation omitted). To prove a RICO claim, Medical Providers must show the following: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (quoting *Sedima, SPRL v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Allstate argues that Medical Providers' amended counterclaim cannot meet those elements. (ECF No. 152, PAGEID.5247.) Allstate contends that Medical Providers' claim is contract-based, does not meet Rule 9(b) requirements, and does not plead a compensable injury. (ECF No. 152.)

### a. Conduct of an Enterprise

The Court reviews the RICO prima facie elements as applied to the claim. "Enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To satisfy the enterprise requirement, an association-in-fact must be an ongoing organization, its members must function as

a continuing unit, and it must be separate from the pattern of racketeering activity

in which it engages. *United States v. Turkette,* 452 U.S. 576, 583 (1981).

A RICO association-in-fact "must have at least three structural features: a

purpose, relationships among those associated with the enterprise, and longevity

sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v.*

*United States*, 556 U.S. 938, 946 (2009). Here, Medical Providers allege all three

structural features required for a RICO association-in-fact: (1) the purpose of the

relationship between Allstate and their "agents, owners, shareholders, directors,

and executive members" is to "deny, delay[,] and diminish" payment on claims

(ECF No. 158, PAGEID.5147); (2) the relationship between the parties is clear (*Id.*

at PAGEID.5418); and (3) the parties have been in business together for "several

years" (*Id.*). Medical Providers have sufficiently alleged a racketeering

"enterprise" for purposes of their RICO claim.

### b. Predicate Acts of Racketeering Activity

18 U.S.C. § 1961(1)(B) defines "racketeering activity" as violations of acts

that are indictable under certain federal statutes. Medical Providers premise their

RICO claims on mail fraud in violation of 18 U.S.C. § 1341.

To state a claim based on mail fraud, Medical Providers must allege three

elements: "(1) devising or intending to devise a scheme to defraud (or to perform

specified fraudulent acts); (2) involving a use of the mails; and (3) for the purpose

11

of executing the scheme or attempting to do so." *United States v. Kennedy*, 714 F.3d 951, 958 (6th Cir. 2013). In its reply brief, Medical Providers assert that their particularized facts include numerous letters Allstate sent as part of their alleged "delay, deny, and defend" fraudulent scheme. (ECF No. 158-22.)

The Court finds that Medical Providers sufficiently stated allegations of mail fraud. Medical Providers' allegations must be accepted as true. *Keys*, 684 F.3d at 608. First, Medical Providers allege that Allstate intended to defraud Medical Providers after McKinsey Consulting implemented a "culture transformation" at Allstate to increase profit margin. (ECF No. 158, PAGEID.5385.) Second, Medical Providers allege that Allstate defrauded Medical Providers by making misrepresentations and omissions in its mailed investigation letters, explanations of benefits, and other correspondences. (*Id.* at PAGEID.5431.) Third, Medical Providers allege that Allstate engaged in a scheme to automatically "deny, delay[,] and diminish" payments on claims, thereby depriving Medical Providers of money. (*Id.* at PAGEID. 5410; *see United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003) (explaining that a scheme to defraud "includes any plan or course of action by which someone intends to deprive another by . . . deception of money or property by means of false or fraudulent pretenses, representations, or promises").

Further, Medical Providers pled predicate acts of mail fraud with particularity as required by Rule 9(b). *Heinrich v. Waiting Angels Adoption Servs.,*

*Inc.*, 668 F.3d 393, 404 (6th Cir. 2012); *see also Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984). To satisfy Rule 9(b), a plaintiff must allege the time, place and contents of the misrepresentation(s) upon which they relied. *Id.* A RICO claim must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank*, 547 F.3d at 570 (citations omitted).

Medical Providers satisfy these elements. With respect to specifying allegedly fraudulent statements and their authors, Medical Providers allege that Allstate falsely stated in its correspondences that claims were under investigation when there was no legitimate need to investigate. (ECF No. 158, PAGEID.5391.) To identify the statements, Medical Providers attached Exhibit W, which contains example correspondences from Allstate. (ECF No. 158-22.)

With respect to stating when or where fraudulent statements were made, Medical Providers included several dated correspondences from Allstate in Exhibit W. *Id.* With respect to explaining why the statements were fraudulent, Medical Providers alleged that Allstate's denials or delays of payments are predetermined to increase Allstate's profit margin. (ECF No. 158, PAGEID.5385, 5432.) Medical Providers' allegations of Allstate's systematic conduct, along with representative

13

examples, comply with pleadings of fraud approved by Eastern District of

Michigan courts. *E.g.*, *Pointe Physical Therapy, LLC*, 107 F. Supp. 3d. at 791.

### c. Pattern of Racketeering

A "pattern of racketeering activity" requires a showing of two or more acts

of racketeering activity. 18 U.S.C. § 1961(5). The racketeering predicate acts must

be "related" and "amount to or pose a threat of continued criminal

activity." *Heinrich*, 668 F.3d at 409 (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*,

492 U.S. 229, 237–39 (1989)). Medical Providers sufficiently alleges both

elements to satisfy this test.

First, Medical Providers satisfied the relatedness prong by showing that the

predicate acts have "similar purposes, results, participants, victims, or methods of

commission, or otherwise are interrelated by distinguishing characteristics and are

not isolated events." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989).

Medical Providers sufficiently alleged that the predicate acts were committed by

the same participants (Allstate and its "agents, owners, shareholders, directors, and

executive members") for similar purposes (to increase profit margins) with similar

victims (Medical Providers and Allstate policyholders), using similar methods of

commission (sending mailings that "deny, delay[,] and diminish" payments).

Second, Medical Providers satisfied the continuity prong of the test by

showing an "'open-ended' pattern (a set of predicate acts that poses a threat of

continuing criminal conduct extending beyond the period in which the

predicate acts were performed).” *Heinrich*, 668 F.3d at 409. Medical Providers

allege that there is a threat of continuing criminal activity beyond the period during

which the predicate acts were performed. (ECF No. 158, PAGEID.5416.)

### d.  Section 1962(d)

Medical Providers’ allegations also plausibly allege an agreement to violate

RICO under § 1962(d). To state a claim under this section, a plaintiff “must

successfully allege all the elements of a [civil] RICO violation, as well as alleg[e]

‘the existence of an illicit agreement to violate the substantive RICO provision.’”

*Heinrich*, 668 F.3d at 411 (quoting *United States v. Sinito*, 723 F.2d 1250, 1260

(6th Cir. 1983)). A plaintiff shows such an agreement “if the defendant objectively

manifested an agreement to participate directly or indirectly in the affairs of an

enterprise through the commission of two or more predicate

crimes.” *Id.* (quoting *Sinito*, 723 F.2d at 1261). As discussed above, there are

sufficient allegations to suggest that the counter-defendants were parties to an

agreement to engage in the alleged predicate acts.

### e.  By Reason Of

Finally, to plead a § 1964(c) claim, Medical Providers must demonstrate that

Allstate’s violation of RICO caused an injury to plaintiffs’ business or property. In

specifying their financial losses, Medical Providers sufficiently established that

15

they suffered an actionable "injury to business or property" as the result of Allstate's denials or delays of payments. (ECF No. 158, PAGEID.5401–5402.)

For the forgoing reasons, the Court finds that the proposed RICO amendment is not futile. Further, as discussed below, Allstate cannot establish substantial prejudice since discovery has yet to begin. Lastly, Medical Providers' stated reason for taking over a year to seek to amend their counterclaims seems plausible, given that they allegedly received new information to advance unique theories of liability pursuant to 42 U.S.C. § 1981 and RICO. Thus, Allstate cannot establish inordinate delay or bad faith. The Court therefore **RECOMMENDS** that Medical Providers' motion for leave to amend its counter-complaint to add a § 1964(c) claim be **GRANTED**.

## B. 42 U.S.C. § 1981 Claims

Medical Providers seek to add two claims under 42 U.S.C. § 1981: one on behalf of each policyholder against each counter-defendant, and one on behalf of the owner of each counter-plaintiff against each counter-defendant. (ECF No. 158.)

Section 1981 bars intentional race discrimination "in the making and enforcing of contracts involving both public and private actors." *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006) (citation omitted); *see also El-Zabet v. Nissan N. Am., Inc.*, 211 F. App'x 460, 462 (6th Cir. 2006) ("[T]he Supreme Court has held that [§ 1981] prohibits only racial discrimination[.]"). Specifically, §

16

1981 protects the right to make, perform, modify, and terminate contracts, and the "enjoyment of all benefits, privileges, terms, and conditions" of the contractual relationship. 42 U.S.C. § 1981(b).

To establish a § 1981 claim, a plaintiff must plead that (1) they belong to an identifiable class of persons who are subject to discrimination based on race; (2) the defendant intended to discriminate against them on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated in § 1981(a). *Amini*, 440 F.3d at 358. The defendant's intent can be established by direct evidence or inferentially. *Id.*

Moreover, under § 1981, a plaintiff must "prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020) (vacating the Ninth Circuit's ruling that a § 1981 plaintiff need only "plead facts plausibly showing that race played 'some role' in the defendant's decisionmaking process").

### 1. Allstate Policyholders

The Court first turns to the § 1981 claim on behalf of Allstate policyholders. Allstate policyholders assigned their rights under their insurance policies to Medical Providers, which included the right to pursue litigation on their behalf. (ECF No. 158, PAGEID.5438; ECF No. 158-20 ("I hereby assign . . . all rights, privileges and remedies to payment for health care services, products or

accommodation).) Contrary to what Allstate argues, this assignment granted

Medical Providers standing to pursue § 1981 litigation. Accordingly, Medical

Providers, as parties whose payments have been denied or delayed by Allstate,

have standing because they have a "personal stake in the outcome of the

controversy." *Sumpter v. Wayne Cnty.*, 868 F.3d 473, 490 (6th Cir. 2017) (citation

omitted). Additionally, Michigan law provides that an "assignee of a cause of

action becomes the real party in interest with respect to that cause of action,

inasmuch as the assignment vests in the assignee all rights previously held by the

assignor." *Cannon Twp. v. Rockford Pub. Sch.*, 875 N.W.2d 242, 246–47 (Mich.

Ct. App. 2015) (citations omitted).

   For this § 1981 claim, Medical Providers argue that Allstate's "delay,

deny[,] and diminish" policy disparately impacts minority policyholders because

94% of the more than 640 policyholders are nonwhite. (ECF No. 158,

PAGEID.5415.) Medical Providers plead that (1) Allstate policyholders are

disparately nonwhite individuals who Allstate discriminated against based on race;

(2) Allstate intended to discriminate against them on the basis of race; and (3) that

Allstate's discriminatory conduct abridged the policyholders' right to contract.

(ECF No. 158.)

   The Court finds that Medical Providers did not plausibly allege (1) that

Allstate intentionally discriminated against the policyholders and (2) that

18

discrimination was the but-for cause of those policyholders not enjoying the

benefits of the contractual agreements. First, the percentage that Medical Providers

point to, standing alone, is not probative of race discrimination. *Gen. Bldg.*

*Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 390 (1982); *see also Patel*

*v. Trinity Health Corp.*, No. 20-10517, 2021 WL 4894637, at *10 (E.D. Mich. Oct.

20, 2021). The Supreme Court has held that a disparate impact claim is viable only

if its impact can be traced to a discriminatory purpose. *Gen. Bldg. Contractors*

*Ass'n, Inc.*, 458 U.S. at 390 (citation omitted). Medical Providers did not plead any

facts in support of a finding of discriminatory purpose.

Second, Medical Providers did not establish discriminatory conduct on

Allstate's part by direct evidence or inferentially. As mentioned above, Medical

Providers solely lists one statistic to establish disparate impact. Additionally,

nothing in the proposed amended counter-complaint establishes that Allstate had

knowledge of the race of any of the policyholders. Exhibit S, which includes

copies of health insurance claims forms submitted to Allstate, does not include any

questions on the policyholder's race. (ECF No. 159-1.)

Third, Medical Providers did not sufficiently allege that but-for each

policyholder's race, they would not have suffered the loss of a legally protected

right. Medical Providers repeatedly state in their complaint that Allstate enacted its

"delay, deny[,] and diminish" policies to maximize profits. (ECF No. 158,

PAGEID.5383–5384, 5387–5396, 5403, 5408, 5410, 5412, 5420, 5430.) Per

Medical Providers, Allstate implemented an automated system to "reduce the

amounts of claims paid." (*Id.* at 5388.)

Medical Providers therefore failed to allege sufficient facts that, even if

accepted as true, would allow the Court to infer that Allstate's denial or delay of

payments flowed from an intentional bias against the race each policyholder.

### 2.  Clinic Owners

The Court now turns to the § 1981 claim pursued on behalf of each counter-

plaintiff against each counter-defendant. Medical Providers argue that Allstate's

"delay, deny[,] and diminish" policy disparately impacts the owners of the medical

clinics because "[c]ounter-[p]laintiffs are owned by owner(s) of Arabic descent."

(ECF No. 158, PAGEID.5440.) It is unclear, however, how many of the clinics are

managed by an owner of "Arabic descent." *Id.* Medical Providers plead that (1) an

unspecified number of the clinics are managed by owners of "Arabic descent;" (2)

Allstate intended to discriminate against them on the basis of race; and (3) that

Allstate's discriminatory conduct abridged the owners' right to payment. (ECF No.

158, PAGEID.5380.)

The Court finds that Medical Providers did not plausibly allege (1) that

Allstate intentionally discriminated against the clinic owners and (2) that

discrimination was the but-for cause of those clinic owners not enjoying

contractual benefits. First, Medical Providers alleged in conclusory fashion that Allstate's conduct "disparately" impacted Medical Providers' owners. (ECF No. 158, PAGEID.5380.) However, Medical Providers failed to plead any facts that show that there is disparate impact. As with their other § 1981 claim, Medical Providers also did not plead any facts in support of a finding of discriminatory purpose.

Second, nothing in the proposed amended counter-complaint establishes that Allstate had knowledge of the race any of the Medical Providers' owners. Finally, Medical Providers did not prove that but-for the race of each clinic owner, the clinic would not have suffered the loss of a legally protected right. As discussed above, Medical Providers emphasize that profit maximization is the incentive behind Allstate's policies. (ECF No. 158, PAGEID.5383–5384, 5387–5396, 5403, 5408, 5410, 5412, 5420, 5430.)

Medical Providers therefore failed to allege sufficient facts that, even if accepted as true, would allow the Court to infer that Allstate's denial or delay of payments flowed from an intentional bias against the race each clinic owner.

Accordingly, the Court finds that the proposed § 1981 amendments are futile. The Court therefore **RECOMMENDS** that Medical Providers' motion for leave to amend its counter-complaint to add two § 1981 claims be **DENIED**.

### C. Michigan Uniform Trade Practices Act Claim

Medical Providers seek to add a claim for declaratory relief pursuant to §

500.2006 of the "Michigan Unfair Trade Practices Act." (ECF No. 158.) The Court

understands that Medical Providers intended to refer to the Michigan Uniform

Trade Practices Act, Mich. Comp. Laws. § 500.2001 et seq. Allstate seeks

dismissal of this claim, arguing that that there is no cognizable private cause of

action under the MUPTA. (ECF No. 152.)

Michigan courts and federal courts applying Michigan law have held that the

MUTPA does not create a private cause of action for breach of an insurance

contract, even when the breach is in bad faith. *Jennings v. Nationwide Mut. Fire*

*Ins. Co.*, No. 11-14439, 2011 WL 5525951, at *2 (E.D. Mich. Nov. 14, 2011)

(citations omitted). However, under MCL § 500.2006, an insurance company may

be penalized at a rate of 12% for untimely payment of benefits. *State Farm Mut.*

*Auto. Ins. Co. v. Universal Rehab Servs., Inc.*, No. 15-10993, 2016 WL 3182000,

at *2 (E.D. Mich. June 8, 2016).

Accordingly, to the extent that Medical Providers seek penalty interest under

the MUTPA, they have pleaded a viable claim. To the extent Medical Providers

seek other relief under the MUPTA, their claim will be dismissed.

The Court therefore **RECOMMENDS** that Medical Providers' motion for leave to amend its counter-complaint to add a MUTPA claim for the limited purpose of recovering penalty interest be **GRANTED**.

### D. Amendment Factors

Courts should grant a party leave to amend its pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave should be denied, however, if the amendment is (1) result of undue delay, (2) not brought with notice, (3) in bad faith, (4) not cured of previously identified deficiencies, (5), going to unduly prejudice the opposing party, or (6) futile. *Robinson*, 918 F.2d at 591; *Foman*, 371 U.S. at 182. Allstate presents several arguments in favor of denying leave.

First, Allstate argues that Medical Providers acted in bad faith by waiting to file their amendment more than a year after filing their original complaint. (ECF No. 152, PAGEID.5263.) It is true that Medical Providers filed their original motion on December 2, 2020 and did not move for leave to amend until February 1, 2022. (ECF No. 33; ECF No. 150.) However, the procedural background of the case contextualizes the delay. As outlined above, Allstate moved to dismiss shortly after Medical Providers' original filing. (ECF No. 100.) Judge Parker did not deny Allstate's motion to dismiss Medical Providers' counter-complaint until September 30, 2021. (ECF No. 129.) After Judge Parker's ruling, Medical Providers emailed Allstate on October 17, 2021 to initiate facilitation. (ECF No. 150-1.) Facilitation

23

took place on January 5, 2022. (ECF No. 152, PAGEID.5264.) Because of the proximity from the January 2022 facilitation to the February 2022 amendment, the Court finds that Medical Providers' delay in filing was not undue or in bad faith.

Second, Allstate argues that Medical Providers' amendment is also in bad faith because counsel for Medical Providers had filed a nearly identical complaint in February 2020 against Allstate, albeit with different plaintiffs.[2] (ECF No. 150, PAGEID.5264; ECF No. 150-4.) Medical Providers refute this, stating that they did not file until February 2022 because of information they uncovered as they prepared for facilitation.[3] (ECF No. 150, PAGEID.5137.) Regarding the RICO and MUPTA claims, Medical Providers clarified that they uncovered how Allstate policyholders were affected by Allstate's actions "during the pendency of this action." (ECF No. 153, PAGEID.5358.) Plaintiffs can seek leave to amend after finding evidence that corroborates their theories. *See Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988) ("[I]t is a principle of basic fairness that a plaintiff should have an opportunity to flesh out her claim through evidence unturned in discovery.").

---

[2] The Court notes that the complaint that Allstate referenced differs from the one here in one respect: Medical Providers included two § 1981 claims.

[3] At oral argument, Medical Providers specified that the new information also included a statistical analysis on the racial makeup of the policyholders. The Court need not address this argument because it only pertains to the addition of the two § 1981 claims, for which the Court has already recommended denial.

24

Third, Allstate contends that they will face substantial prejudice because their ability to satisfy a judgment against Medical Providers has "severely eroded" over time. (ECF No. 152, PAGEID.5262.) Allstate explains that Medical Providers have had a $6 million consent judgment entered against them since the onset of this litigation. *Id.* Medical Providers argue that discovery has not yet begun and that Allstate will not suffer substantial prejudice if leave to amend is granted. (ECF No. 150.)

In assessing prejudice in motions to amend, a court must find "at least some significant showing of prejudice" to the opponent. *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986). The possibility that Allstate will be unable to satisfy its judgment against Medical Providers does not constitute a significant showing of prejudice. Instead, "much of the identified prejudice is inherent in the nature of complex litigation." *See Counts v. Gen. Motors, LLC*, No. 16-CV-12541, 2018 WL 2717484, at *6 (E.D. Mich. June 6, 2018) (finding that, with plaintiffs' amendments to pleadings, defendants will always face the "prejudice" of delays and defending suits on their merits). The Court finds that Allstate failed to establish significant prejudice.

Finally, as discussed above, the futility factor only dooms the two § 1981 claims.

### E. Conclusion

For the reasons below, the Court **RECOMMENDS** that Medical Providers'

motion be **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Court

**RECOMMENDS** that Medical Providers' motion for leave to amend (1) to add a

§ 1964(c) claim be **GRANTED**, (2) to add two § 1981 claims be **DENIED**, and

(3) to add a MUPTA claim be **GRANTED**.


Dated:   April 29, 2022                          s/**Jonathan J.C. Grey**
                                                             Jonathan J.C. Grey
                                                             United States Magistrate Judge

## Notice to the Parties About Objections

Within 14 days of being served with a copy of this Report and Recommendation, any party may object to and seek review of the proposed findings and recommendations set forth above. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). If a party fails to timely file specific objections, any further right of appeal is waived. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Only specific objections to this Report and Recommendation are preserved for appeal; all other objections are waived. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). Each objection must be labeled as "Objection No. 1," "Objection No. 2," etc. Each objection must specify precisely the provision of this Report and Recommendation to which it pertains. In accordance with Local Rule 72.1(d), copies of objections must be served on this Magistrate Judge.

A party may respond to another party's objections within 14 days after service of any objections. Fed. R. Civ. P. 72(b)(2). Any such response should be concise and address each issue raised in the objections in the same order and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.